UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN E. HOWARD, GREGORY W. SCOTT,
JOHNNY L. SMITH, THOMAS VAZQUEZ,
JOHN WYCHE, HENRY ROUSE, ARCHIE
ROUSE, AFRO-AMERICAN POLICE ASSOCIATION,
Individually and on behalf of
all other persons similarly situated,

         Plaintiffs,    **DECISION**
                   **and ORDER**
   v.

ELISHA FREEDMAN, CITY MANAGER OF THE
CITY OF ROCHESTER, NEW YORK, THOMAS
HASTINGS, CHIEF OF POLICE OF THE CITY
OF ROCHESTER POLICE DEPARTMENT,
MEMBERS OF THE COUNTY COMMISSION,
EXECUTIVE DIRECTOR OF THE COUNTY OF
MONROE CIVIL SERVICE COMMISSION,

         Defendants.

---

Right margin stamp: U.S. DISTRICT COURT / W.D.N.Y ROCHESTER / 74-CV-234T

## INTRODUCTION

In May, 1974, the plaintiffs in this case filed suit against the City Manager for the City of Rochester, and various other City officials seeking increased minority representation within the Rochester City Police Department. On May 12, 1975, the late Honorable Harold P. Burke of this court issued a Consent Decree under which the defendants agreed to increase and maintain the number of minority police officers serving in the Rochester City Police Department ("RPD" or "Department"). On May 27, 1992, I modified (in part) and extended the duration of the Consent Decree.

Under the terms of the Decree, the RPD is to ensure that one-quarter of each incoming class of police recruits is comprised of minority candidates. While the RPD has generally maintained that standard throughout the duration of the modified Consent Decree, it now moves for an Order waiving, on a temporary, one-time basis, the hiring ratio required under the Decree. According to the Honorable William Johnson, Mayor of the City of Rochester, and Rochester Chief of Police Robert Duffy, the Department anticipates that despite targeted recruiting efforts, it will be unable to comply with the requirements of the Decree with respect to the pending class of 25 police recruits, currently scheduled to be admitted in February, 2004. The Department contends that because of the serious and immediate need for additional police officers at this time, it would unduly burden the Department and the City of Rochester to wait until additional minority candidates can be recruited before admitting the current class of candidates into the ranks of the RPD.

On January 9, 2004, I issued an Order to Show Cause why the hiring provisions of the Consent Decree should not be waived on a one-time basis to allow the RPD to admit a new class of 25 police officers, in which less than 6 recruits are members of a minority group. On January 15, 2004, I heard argument on defendants' motion for a waiver. Based on the parties written submissions and

comments made during argument of defendants' motion, the following constitutes my findings and conclusions.

## DISCUSSION

The Consent Decree in place in this action has been effective. The Decree requires that 25 percent of the police force be comprised of minority officers, and currently, according to the Affidavit of Rochester Chief of Police Robert Duffy, the Police Department consists of 28.5 percent minority police officers. Moreover, the RPD is taking aggressive steps to comply with the spirit and the letter of the Decree. Specifically, according to the Affidavit of Rochester Police Department Police Officer Adrian Smalls (one of the officers in charge of minority recruiting), Department recruiters have visited local high schools and colleges seeking minority candidates. Additionally, the Department regularly advertises for minority candidates on local radio and television stations, and the Department has reached out to minority applicants outside the local metro area by seeking recruits at job fairs in Pittsburgh, Pennsylvania, Buffalo, New York, and New York City.

Much of the campaign to attract minority applicants has been successful. Almost one third of 1,700 persons who applied to take the December 2003 Police Officer Examination were members of a minority group. However, while 152 minority candidates passed the written examination, 64 candidates failed to proceed to the second

step of the selection process, and an additional 29 candidates withdrew from the recruiting process at a latter stage. Also, 34 candidates failed an agility test, and an additional 19 candidates were deselected after a background check. Thus of the 152 candidates who passed the written examination, only six candidates were eligible to be considered for employment as police officers.

Based on the attrition rate of minority candidates during the examination process, it is clear that recruiting alone is not the answer to the Department's recent difficulty in meeting the goals of the Consent Decree. The fact that 64 of the 152 minority candidates that passed the written examination failed to proceed to the second step of the testing process should be of concern to the Department, and the Department should attempt to determine why the recruits disengaged from the selection process, and how to prevent that from recurring in the future.

Additionally, the Department should continue to develop new strategies to attract and retain qualified minority candidates. The Department's recruiting of local high school and college students is commendable, and should remain aggressive, focusing on the lucrative compensation and benefits packages available to career police officers. During oral argument, counsel for the plaintiff class suggested looking to the military as a potential source of qualified police officer candidates. Counsel also

suggested the possibility of hiring qualified potential candidates who do not meet the minimum age requirement of 20 and placing them in administrative positions until such time as they become eligible for consideration by the RPD. The Department should also explore the possibility of offering continuing education to interim candidates who have not met the minimum age requirement. These suggestions are worthy of serious consideration by the RPD as the Department continues its efforts to develop innovative strategies to attract qualified minority candidates.

I note that the Police Department has for years complied with the terms of the Decree, and indeed, has exceeded many of the Decree's goals. Therefore, I grant the defendants' motion for a one-time waiver of the Consent Decree's hiring requirement, on the condition that the RPD will use its best efforts to attract a higher percentage of minority recruits over the next three to four recruiting classes to compensate for the decrease in minority recruits in the February 2004 class.

However, I direct the defendants to submit biannual reports to the court and opposing counsel, starting in June 2004, detailing the steps taken to attract and ensure increased minority participation in the recruiting process. Once the Department has accounted for the deficit of minority candidates in this recruiting class by hiring additional minority candidates beyond the ratio required under the Decree, the Department may request this Court to

discontinue the biannual reporting, and report on its efforts and progress on an annual basis, as contemplated in the Consent Decree.

## CONCLUSION

For the reasons set forth above, I grant defendants' motion for a temporary waiver of the hiring requirement of the 1975 Consent Decree, as modified in 1992. The Consent Decree otherwise remains in full force and effect, and indeed, despite the RPD's historic compliance with the terms of the Decree, none of the parties have requested nor even suggested that the Decree be terminated. The parties and the court are in agreement that the Decree serves a beneficial purpose in encouraging and mandating a highly qualified, diverse, and professional police force. Accordingly, the parties are charged with the continued adherence to the terms of the Decree, subject only to the limited, one-time waiver granted herein.

ALL OF THE ABOVE IS SO ORDERED.

_____
Michael A. Telesca
United States District Judge

DATED:   Rochester, New York
         January 20, 2004

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN E. HOWARD, GREGORY W. SCOTT,
JOHNNY L. SMITH, THOMAS VAZQUEZ,
JOHN WYCHE, HENRY ROUSE, ARCHIE
ROUSE, AFRO-AMERICAN POLICE ASSOCIATION,
Individually and on behalf of
all other persons similarly situated,

                  Plaintiff(s),

    - vs -                              74-CV-234 T

ELISHA FREEDMAN, CITY MANAGER OF THE
CITY OF ROCHESTER, NEW YORK, THOMAS
HASTINGS, CHIEF OF POLICE OF THE CITY
OF ROCHESTER POLICE DEPARTMENT,
MEMBERS OF THE COUNTY COMMISSION,
EXECUTIVE DIRECTOR OF THE COUNTY OF
MONROE CIVIL SERVICE COMMISSION,

                  Defendant(s).

---

       Take notice of an Order, of which the within is a copy, duly granted in the within entitled action on the 20th of January, 2004 and entered in the office of the Clerk of the United States District Court, Western District of New York, on the 23rd, of January, 2004.

Dated:    Rochester, New York
           January 23, 2004

                                      RODNEY C. EARLY, Clerk
                                      U. S. District Court
                                      Western District of New York
                                      282 U. S. Courthouse
                                      Rochester, New York 14614

TO: