UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN E. HOWARD, et al.,

                     Plaintiffs,

v.

ELISHA FREEDMAN, et al.,

                     Defendants.

DECISION AND ORDER

Case # 74-CV-234-FPG

---

## INTRODUCTION

In May 1974, Plaintiffs in this case sued the City Manager for the City of Rochester (the "City"), and various City officials, seeking increased minority representation among the police officers of the Rochester Police Department ("RPD"). On May 12, 1975, the late Honorable Harold P. Burke issued a Consent Decree under which Defendants agreed, among other things, to increase and maintain the number of minority[1] police officers serving in the RPD. ECF No. 95. The Consent Decree required Defendants to take several steps to increase and maintain recruiting of minority applicants. It was designed to terminate once one-quarter of RPD officers were non-white.

On May 27, 1992, the late Honorable Michael A. Telesca modified the Consent Decree in part by removing the clauses tying the termination of the Consent Decree to achieving the goal of 25% minority representation in the RPD. ECF No. 96. The modification of the Consent Decree appeared to recognize that the Court's continued monitoring would help facilitate progress toward increased minority representation. Therefore, the Consent Decree would continue until further order of the Court.

---

[1] As used in the Consent Decree and as modified in subsequent orders, "minority" means a person who is "black, [Hispanic], or a member of some other nonwhite minority group." ECF No. 95 at 5; see ECF No. 96 at 4. The Court uses this term interchangeably with "non-white."

1

On October 23, 2006, Judge Telesca again modified the Consent Decree to require that, in certain circumstances, the RPD explain its reasons for rejecting a minority application, and to provide the applicant with the right to review. ECF No. 84.

Under the Consent Decree, the RPD is required to select "two persons from the sublist of qualified minority candidates for every three persons selected from the sublist of qualified nonminority candidates." ECF No. 96 at 2. While the RPD has generally maintained that standard throughout the duration of the Consent Decree, it has occasionally sought temporary waivers of the hiring ratio. *See* ECF No. 97. Under the Consent Decree, the RPD is required to file an annual report regarding its hiring and retention efforts for minority candidates.

On March 12, 2021, the RPD filed its annual status report. ECF No. 110. The 2021 report indicated that, in 2020, 20 officers were hired, 6 of whom were minorities. Unfortunately, three of those minority candidates have since resigned. ECF No. 110 at 1-2. The remaining candidates were white. Due to the COVID-19 pandemic, 2020 recruitment efforts were largely conducted virtually and the RPD placed increased emphasis on social media. ECF No. 110 at 2.

Although the modifications of the Consent Decree removed the Consent Decree's termination provision tied to 25% minority representation, in their reports to the Court, Defendants continue to use it as a benchmark. The RPD currently employs 697 police officers, 75.3% of whom are white. The remaining 24.7% of RPD police officers are minorities: 10.9% black, 11.0% Hispanic, and 2.8% Asian.[2] Dishearteningly, the current staffing level of non-white officers still falls below the 25%.

---

[2] The Court notes that 86.4% of RPD police officers are men and only 13.6% are women. While outside the scope of the Consent Decree, the Court recommends that the RPD look critically at its hiring practices as they relate to women.

2

## DISCUSSION

Recognizing the toll the COVID-19 pandemic has had on hiring and retention, the Court accepts Defendants' report but notes that the current staffing level of minorities at the RPD falls slightly short of the 25% level originally anticipated by the Consent Decree. The Court encourages Defendants, as Judge Telesca did in a prior order, to "persist . . . in [their] aggressive approach to recruiting qualified minority candidates in keeping with the intent and spirit of the Consent Decree." ECF No. 102 at 2. While the Court acknowledges Defendants' efforts to recruit and retain minority candidates, the Court encourages Defendants to implement new initiatives and strategies to eliminate the shortfall and increase recruitment *and* retention of non-white police officers.

**I.    Recruitment and Retention**

The Court recognizes that Defendants have engaged in substantial efforts to recruit qualified minority candidates. For example, the RPD has developed a recruitment unit attached to its Community Affairs Bureau, hired two full-time recruiters, increased the budget for recruiting, purchased and utilized new recruitment vehicles, and increased its recruitment social media presence.

Still, that the RPD continues to struggle to meet or exceed the 25% non-white goal contemplated in the Consent Decree demonstrates that more hard work is needed. Defendants are encouraged to consider and implement appropriate recommendations contained in the City's "Community Response to Governor Cuomo's Executive Order 203: Police Reform and Reinvention Collaborative," issued in March 2021 (the "Community Response").[3] Among other

---

[3] City Council approved the plan on March 29, 2021. The approved plan is located at: https://www.cityofrochester.gov/executiveorder203/.

3

things, the Community Response recommends that the RPD overhaul the Civil Service hiring system, create civilian public safety interview panels to assess candidates for the RPD, increase recruitment through the Rochester City School District and local colleges, share information with the community about the backgrounds of new hires, and require city residency for newly-hired police officers. Defendants may also consider expanding the geographic area in which they recruit police officers—both as new recruits and as lateral, experienced candidates from other departments—to other parts of the country in an effort to broaden the pool of diverse candidates. To that end, the RPD's marketing and recruiting efforts must be designed to seek and hire diverse candidates that reflect the City's population. Additionally, Defendants should consider how the RPD can better convert passing police officer civil service exam candidates into recruit class members. For example, in 2020, there were 165 minority candidates who passed[4] the police officer civil service exam; only six were hired. ECF No. 110 at 3. Whether that is because candidates were offered positions but declined them or because they were not offered positions, Defendants must work to broaden the appeal of becoming a police officer in the RPD.

This raises a final point: Defendants must consider not only how they can *recruit* minority police officers, but also, importantly, how they can *retain* those officers. For example, in 2020, the RPD hired six minority police officers into its recruit class; three have already resigned. Retention of just half of the hiring class of minority police officers after less than a year is unacceptable.

## II.    The City's Changing Demographics

The purpose of the 1975 Consent Decree was to "increase minority representation" within the RPD's ranks to 25%. That benchmark was set to correspond to the demographic composition

---

[4] Critically, nearly 93% of minority exam participants passed the exam. ECF No. 110 at 3.

of the City in the 1970s. Since then, the demographics have shifted dramatically, widening the gulf between the demographic makeup of the RPD's officers and the people they serve.

In the 1970s, the City's population was 82.4% white and 16.8% non-white.[5] *Statistical Abstract of the United States: 1974*, United States Census Bureau, *available at* https://www.census.gov/library/publications/1974/compendia/statab/95ed.html (last visited Mar. 31, 2021) (Rochester's statistics are located in Part 13 on page 907). By 2019—the latest data available from the Census Bureau—the proportion of the City's population that is white decreased to 36.7%, while the proportion of minorities has increased to about 63%, including 39.8% black, 19.2% Hispanic, and 3.1% Asian. *QuickFacts: Rochester city, New York*, United States Census Bureau, *available at* https://www.census.gov/quickfacts/rochestercitynewyork (last visited Mar. 31, 2021). Yet the demographic composition of RPD officers in 2020 does not reflect the demographics of the people they now serve. Rather, the composition of RPD officers in 2020 mirrors the demographics of the City as they were nearly 50 years ago.

That must change. The Consent Decree recognized that representation matters. Ensuring that City residents see and interact with police officers who have had similar life experiences and who look like them is not just a hollow aspiration; it makes policing more effective. But, as the Community Response suggests, with the demographic shifts in the City's population, the original directive that RPD's ranks include 25% non-white officers is outdated and woefully out of step with the Rochester of today. Sadly, the RPD cannot even meet that outmoded and underwhelming metric. With such a high proportion of minority City residents, the corresponding proportion of minority RPD officers should be much higher. Such a low bar has, perhaps, enabled the RPD's

---

[5] At the time, the United States Census Bureau only differentiated between "white" and "negro" residents. *Id.*

hiring and retention efforts to stagnate. We can do better. The RPD must endeavor to foster new ideas and renewed commitment to racial parity.

## CONCLUSION

The Court is not in a position to require such changes, but it can help to facilitate them. As the Consent Decree contemplates and the Community Response recognizes, the parties may seek modification of the Consent Decree. Court encourages them to do so as part of a more comprehensive plan to fulfill the spirit of the Consent Decree if they deem it the most effective way to reach this goal. In addition, by **April 30, 2021**, Defendants shall prepare and file a report to the Court:

1. Detailing (A) the recruiting and retention efforts the RPD has taken to increase and maintain minority representation and (B) the recruiting and retention efforts the RPD intends to take in the future to increase and maintain minority representation; and

2. Describing the reasons the most recent non-white RPD officers resigned from the police force, without divulging identifying information or violating confidentiality.

IT IS SO ORDERED.

Dated: March 31, 2021
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court